ANTHONY DAURY, ADMINISTRATOR, vs. ALBERT FERRARO ET AL.

Third Judicial District, New Haven, June Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued June 13th—decided September 28th 1928.

*William B. Hennessy,* with whom was *John B. Greco,* for the appellant (plaintiff).

*Walter E. Monagan,* for the appellees (defendants).

WHEELER, C. J. This action is brought to recover damages for the death of plaintiff's intestate, alleged to have occurred in Massachusetts through the negligence of the defendants, who pleaded as a special defense that at the time of the injury complained of there was in force §9 of Chapter 346 of the Acts and Resolves of Massachusetts for the year 1925, to wit: "A person who by his negligence or by his wilful, wanton or reckless act, or by the negligence or wilful, wanton or reckless act of his agents or servants while engaged in his business, causes the death of a person in the exercise of due care, who is not in his employment or service, shall be liable in damages in the sum of not less than five hundred nor more than ten thousand dollars, to be assessed with reference to the degree of his culpability or that of his agents or servants, to be recovered in an action of tort, commenced . . . within two years after the injury which caused the death by the executor or administrator of the deceased."

Ground two of the plaintiff's demurrer to the special defense upon which he stands is general instead of special. The rules of practice and a long line of the decisions of this court point out that general demurrers are no longer a part of our system of pleading. Since the defendants do not attack the demurrer on this ground, and the court has overlooked the bad pleading, and the parties are in agreement that the ground of the trial court's decision on the demurrer is the sole ground of appeal, we have decided to determine this question, which is, whether the statute pleaded by way of special defense affording a right of action to the plaintiff for the death of his intestate is penal and therefore incapable of enforcement in the courts of Connecticut.

The ruling of the trial court was based upon our decision in *Cristilly* v. *Warner*, 87 Conn. 461, 88 Atl.

711, in which we held that the construction of a statute of Massachusetts, substantially like that before us, by the Supreme Judicial Court of that State as penal would be accepted by us as final. The trial court was right in its conclusion that "until *Cristilly* v. *Warner* is overruled, it is the law of Connecticut."

The appellant invites our attention to certain changes which he asserts have occurred in the legislation and judicial decision of Massachusetts which no longer make it possible to hold that Massachusetts now regards this statute as of such a penal character as to be unenforceable elsewhere. The discussion of this claim requires a re-examination of *Cristilly* v. *Warner*. The history of this statute and the construction placed upon it by the Supreme Judicial Court of Massachusetts is set forth in many decisions, chief of which are: *Carey* v. *Berkshire R. Co.*, 55 Mass. (1 Cush.) 475; *Commonwealth* v. *Boston & L. R. Corp.*, 134 Mass. 211; *Hudson* v. *Lynn & B. R. Co.*, 185 Mass. 510, 516, 71 N. E. 66; *Merrill* v. *Eastern R. Co.*, 139 Mass. 252, 257, 29 N. E. 666; *Littlejohn* v. *Fitchburg R. Co.*, 148 Mass. 478, 482, 20 N. E. 103; *Doyle* v. *Fitchburg R. Co.*, 162 Mass. 66, 71, 37 N. E. 770; *Mulhall* v. *Fallon*, 176 Mass. 266, 269, 57 N. E. 386.

We based our decision in *Cristilly* v. *Warner* upon these decisions. In them the Massachusetts court had construed the remedy under this statute by an action of tort as a substitute for that by indictment, held that the primary purpose of each was punishment and not compensation and that its method of assessing the damages measured by the degree of culpability was indicative of its punitive character, and had not only characterized but defined the action as one to secure a penalty. Those who construe these statutes as compensatory and not punitive in character rely largely upon the statement in *Commonwealth* v. *Boston &*

*A. R. Co.,* 121 Mass. 36, 37, that "a leading object of them is to secure some pecuniary provision for those who may be dependent upon the deceased, and while penal in form, they are therefore largely remedial in character." It stands apart from the many Massachusetts decisions upon this point prior to *Cristilly* v. *Warner.* It seems not only difficult, but absolutely impossible, to read with care all of the decisions upon this subject and not conclude that this expression is diametrically opposed to the great body of Massachusetts decision. There is only one sense in which this statute may be denominated remedial, and that is stated in *Brown* v. *Thayer,* 212 Mass. 392, 399, 99 N. E. 237: "The statute may be designated as remedial for the reason that a remedy is provided where before its enactment none existed." About a year after *Cristilly* v. *Warner,* the Supreme Judicial Court of Massachusetts decided the case of *Boott Mills* v. *Boston & M. R. Co.,* 218 Mass. 582, 106 N. E. 680. In the course of his opinion, Rugg, C. J., reviews the decisions upon this subject at length, reaching precisely the viewpoint upon which *Cristilly* v. *Warner* was decided. At page 584, he says: "The remedy provided by our statutes imposing liability for negligently causing the death of a human being uniformly, from the earliest instance, has been punitive in nature. . . . None of these statutes has made the amount of damages recoverable compensatory in their character. . . . The greater fault the greater has been the sum recovered. . . . The wrongdoer is punished according to his guilt, and that which is in substance a fine proportioned to that guilt is paid to the person or persons, or some of them, who have suffered by reason of the death and thus to whom the injury has been done." Supporting *Brown* v. *Thayer, supra,* the court continues (p. 585): " 'The statute may be designated as remedial for the reason

that a remedy is provided where before its enactment none existed. But the damages assessed are distinctly grounded upon the defendant's culpable misconduct and are diminished or enhanced according to the degree of his delinquency.'" The opinion reiterates its conclusion that the death statute is punitive and its purpose punishment: "That the general death statute . . . is a punitive statute seems to be settled by *Brown* v. *Thayer*, 212 Mass. 392 [99 N. E. 237]." The opinion further states: "It is an unavoidable consequence of the proposition that the damages recovered for death under St. 1909, C. 514, §§128-131, are punitive and not compensatory in character that the employer, who has been punished by paying the amount of a verdict against him, cannot recover from one who has contributed to the wrongful conduct on which that verdict was founded. . . . The idea of a penalty or punishment excludes liability on the part of anybody except the wrongdoer." And, at page 589: "In effect it is a punishment by the imposition of that which in substance is a fine and not the payment of a . . . civil obligation. Under statutes where the relief afforded was by indictment alone, it is easy to see that the money received by the family of the deceased was a gratuity from the government derived from the fine imposed upon the one negligently causing the death. In this Commonwealth there is no such thing known to the common law as the recovery of punitive damages in addition to compensatory damages."

Again, in *McCarthy* v. *Wood Lumber Co.*, 219 Mass. 566, 107 N. E. 439, Rugg, C. J., says: "The present action is penal in its nature, damages being not compensatory but assessed solely with reference to the culpability of the defendant, while in the other action damages were recoverable only by way of compensation. The damages sought in the present action are in

substance a fine imposed upon one who by negligence causes the death of a human being. The fine, instead of being paid into the treasury of the Commonwealth, is given as a gratuity to the next of kin. *Boott Mills* v. *Boston & M. R. Co.*, 218 Mass. 582, [106 N. E. 680], and cases there collected."

This viewpoint is in entire accord with what has been denominated the Massachusetts system and with the construction placed upon the decisions of that jurisdiction in *Cristilly* v. *Warner*. *Johnston* v. *Bay State Street Ry. Co.*, 222 Mass. 583, 111 N. E. 391, speaks of their statute in these terms: "In the emphasis given to the consideration of the wrongful and blameworthy conduct of the defendant there appears a dominating purpose to induce carriers and others to exercise a higher degree of care toward passengers. . . . Compensation is a secondary consideration and results only from the provision common to indictment and action that the fine or damage shall be paid to or recovered by the executor or administrator of the deceased to the use of certain designated persons." In *Sullivan* v. *Hustis*, 237 Mass. 441, 446, 130 N. E. 247, Rugg, C. J., says: "It is settled beyond doubt by a long line of decisions that said §245, so far as concerns recovery of damages for death, is in some aspects punitive in its nature. Only a few recent cases need be cited. . . . Nothing here decided narrows or limits the scope of those decisions." Later the opinion states: "But said §245 has also compensatory features and a remedial function. The money exacted from a defendant is paid to the use of the widow, children or next of kin of the deceased, . . . and not to or for the benefit of the State. While damages are not assessed on the basis of compensation but with reference to the extent of the element of wrongdoing in the tortious act, nevertheless they are paid for the benefit of the person injured or

the family of the person whose life is lost." We find it stated in *Prondecka* v. *Turners Falls Power & Electric Co.*, 238 Mass. 239, 242, 130 N. E. 386: " 'A limited penalty is imposed, as a punishment of carelessness in common carriers.' " In a still later case the court holds: "This statute conforms in the main to the policy of this Commonwealth in affording remedy for the death of a human being caused by negligence. That policy, as shown by all our statutes of this general nature, is in some aspects punitive and in some aspects compensatory and remedial." *Putnam* v. *Savage*, 244 Mass. 83, 85, 138 N. E. 808.

From these expressions in the last four cases cited the appellant insists that the Supreme Judicial Court has reversed its construction of the death statutes as they existed at the time of the decision in *Cristilly* v. *Warner*. We are unable to believe that that court has intentionally receded from a construction which it has so abundantly demonstrated to have been the legislative purpose from the time of *Carey* v. *Berkshire R. Co., supra*. Perhaps the explanation rests in its use of compensation in the sense of reparation. Under its system damages were assessed according to the degree of culpability and not according to the measure of loss. Their imposition was the very antithesis of Lord Campbell's Act. They were imposed as a fine and paid to the relatives "as a gratuity from the Commonwealth." If this construction stands the damages assessed are in no proper sense compensatory. They are reparation for a wrong done and nothing else. The death statutes are remedial in one sense only; they provide a remedy where before their enactment none existed. *Boott Mills* v. *Boston & M. R. Co.*, and *Hudson* v. *Lynn & B. R. Co., supra*. If the use of the term compensatory were thought essential to show that the death statutes, though penal, were not such in

the international sense of that word, we think that argument can be sustained without construing these statutes as compensatory in giving damages to those who have been, presumably, wronged. A gratuity or gift cannot well be reconciled with a recompense or indemnification for loss. When the court had before it the question whether damages assessed under its death statute fell within the prohibition of the order of the Director General of Railroads limiting suits which can be brought against carriers for injuries to person or property exclusive of those for the recovery of fines and forfeitures, it held that recovery in such cases was so far penal and punitive and in the nature of a fine, that although the statute has certain compensatory features and a remedial function, no recovery could be awarded. The decision is sound, since the recovery under the death statute was punitive and not compensatory and the order permitting a recovery in a suit for injury done was essentially an action for compensation and not for the recovery of a gratuity by means of a fine. In one particular it is apparent the court intends to differ with a part of the argument advanced in *Hudson* v. *Lynn & B. R. Co., supra,* where the court said the penalty recovered under the death statutes was of the same kind as that maintained by an informer for a penalty except as to the persons who receive the penalty. The court was explicit in its statement in *Putnam* v. *Savage,* 244 Mass. 83, 88, 138 N. E. 808, that "the cause of action here in issue is not penal in the sense in which that word is used in connection with statutes giving right of recovery to informers, to those suffering indirectly from losses by gambling and similar statutes." This was a rather necessary sequence of the court's acceptance of the principle announced in *Huntington* v. *Attrill,* 146 U. S. 657, 13 Sup. Ct. 224.

The appellant next claims that the death statute of Massachusetts is not penal in the international sense and only statutes which are penal in that sense are unenforceable in other State jurisdictions. Mr. Justice Beach in his dissenting opinion in *Cristilly* v. *Warner,* writes: "I do not understand that the opinion of the court expresses any different view" as to the definition of a penal statute in its strict and proper sense as given in *Huntington* v. *Attrill, supra.* He was entirely correct in this. We did not express any opinion upon that point, for the reason that the claim was not presented by counsel in their briefs or oral argument, nor in the viewpoint of the trial court in deciding the demurrer from the judgment on which the appeal was taken. We do not intend to be understood as asserting that the point was not raised by the appeal. It was legally raised under the reason of demurrer that the court erred in deciding that the statute was a penal one, but the present claim was not passed upon by us for the reason stated. Before the decision in *Huntington* v. *Attrill, supra,* anything was regarded as penal, as that term is used in the conflict of laws, "that a defendant is compelled by law to pay plaintiff other than that which is necessary to compensate him for legal damage done him by the defendant." Goodrich on Conflict of Laws, p. 12. *Huntington* v. *Attrill* adopted a new test of a penal law which is unenforceable in another jurisdiction: "The question whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act." "The test whether a law is penal, in the strict and primary sense, is whether the wrong

sought to be redressed is a wrong to the public, or a wrong to the individual." At another point in the opinion the court says: "Penal laws, strictly and properly, are those imposing punishment for an offense committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon." "This language," Wharton says in Conflict of Laws (3d Ed.) Vol. 1 at p. 18, "when read in connection with other portions of the opinion, seems to confine the rule that the courts of one State or country will not enforce the penal laws of another, to prosecutions and sentences for crimes and misdemeanors, and suits in favor of the State for the recovery of pecuniary penalties, and to exclude actions by the individuals wronged to enforce, for their own benefit, the statutory liability imposed upon the wrongdoer." Such a rule for determining what are the penal actions which are unenforceable in the courts of the other States furnishes a rule of certainty, the dividing line between the penal actions which are unenforceable and those which are not being definitely marked. It also makes judgments acquired in foreign States more generally enforceable, "surely a desirable result," as Professor Goodrich observes.

Prior to the decision in *Huntington* v. *Attrill* the Privy Council of Great Britain in the same case had reversed the judgment of the Court of Ontario and reached a like decision as to what was a penal law in the international sense. *Huntington* v. *Attrill*, L. R. (1893) A. C. 150. This has remained the law of England ever since. *Raulin* v. *Fischer*, L. R. (1911) 2 K. B. 93.

Minor, in Conflict of Laws, §10, has stated that the question before the court in *Huntington* v. *Attrill* was whether the refusal of the court of Maryland to enforce a judgment of a court of New York was a violation of

the full faith and credit clause of the United States Constitution, and that the decision of what constituted a penal obligation was not involved. We think the determination required the ascertainment of the nature of the judgment which required also the ascertainment of the nature of the cause of action. If the cause of action was penal in the international sense, the judgment of the State court must stand, but if it was penal in any other sense, the judgment could not stand because the refusal to enforce the judgment of New York was in violation of the Federal Constitution.

*Huntington* v. *Attrill* has been cited in several opinions of the United States Supreme Court, but not precisely upon the penalty doctrine of that case, except in *Northern Pacific R. Co.* v. *Babcock,* 154 U. S. 190, 14 Sup. Ct. 978, until the case of *Atchison, T. & S. F. Ry. Co.* v. *Nichols,* 264 U. S. 348, 44 Sup. Ct. 353. That was an action to recover damages under a statute of New Mexico which provided that when one shall die through the negligence of a railroad company, it "shall forfeit and pay for every person or passenger so dying" the sum of $5,000, to be sued for and recovered by the husband in case of the death of the wife; it was originally brought in the Superior Court of California, removed to the District Court of the United States, where judgment was rendered for the railroad, later reversed by the Circuit Court of Appeals and appeal taken to the Supreme Court of the United States. The court, speaking by Mr. Justice McKenna, said: "The law of New Mexico is within the principle and description of those rulings, and of *Huntington* v. *Attrill.* It is in reparation of a private injury, not in punishment of 'an offense against the public justice of the State.' Its reparation is a fixed amount, it is true, but it is in an amount that has been fixed by a consideration of the determining factors, they necessarily having a cer-

tain similarity in all cases. It was the legislative judgment, therefore, that the interests of the State would best be served by an exact definition of the measure of responsibility and relief when the circumstances were such as are represented in the law. It is not less reparative because so defined. . . . We repeat, we think the motive and effect of the law is not punishment in the sense of a penal law, but remuneration—'damages for a civil injury.' " The court then affirmed the judgment of the ninth circuit. Whether Professor Minor was right or wrong in thinking that the discussion in *Huntington* v. *Attrill* of the nature of the obligation was obiter, this decision sets that question at rest. It is now conclusive upon that point as to all Federal courts. And conclusive upon all State courts in actions there brought to enforce a foreign judgment; it is not conclusive as to the nature of the obligation in other forms of action brought upon the obligation and not upon the judgment thereon. Yet all State courts must give great weight to the decision upon this precise point and when that opinion is shared by the Privy Council of Great Britain, "the rule of law thus announced," as Professor Goodrich writes, "by the two highest courts of the common law world will be persuasive if not conclusive authority." The concurrence of judicial decision upon this point will give greater certainty to the law and promote the transaction of business between the peoples of the States by making the enforcement of obligations originating in other States include vastly more obligations than could have been enforced before this general principle of jurisprudence was invoked in *Huntington* v. *Attrill,* with the result of making the boundary lines of the States far more shadowy as far as the transactions of business are concerned. When, in October, 1913, *Cristilly* v. *Warner* was decided, two of the State courts—in

*O'Reilly* v. *New York & N. E. R. Co.,* 16 R. I. 388, 17 Atl. 171, 906, 19 id. 244, and *Adams* v. *Fitchburg R. Co.,* 67 Vt. 76, 30 Atl. 687—had construed the Massachusetts statute as we did, while one Federal court, in *Boston & M. R. Co.* v. *Hurd,* 108 Fed. 116, had reached a contrary conclusion. In January, 1914, the New Hampshire court, in *Hill* v. *Boston & M. R. Co.,* 77 N. H. 151, 89 Atl. 482, construed this statute as MR. JUSTICE BEACH did in his dissenting opinion in *Cristilly* v. *Warner.* Subsequently MR. JUSTICE BEACH, in March, 1918, wrote his article, "Uniform Interstate Enforcement of Vested Rights," 27 Yale Law Journal, 656; and then followed *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 120 N. E. 198, supporting a right of action under this statute in the courts of New York; after these came *Wellman* v. *Mead,* 93 Vt. 322, 107 Atl. 396, overruling its decision in *Adams* v. *Fitchburg R. Co.,* 67 Vt. 76, 30 Atl. 687. All of these authorities held in accordance with *Huntington* v. *Attrill* that the action under this statute though penal in some sense was not penal in the international sense. There are other authorities which may be cited which hold similarly, among which are: *Gulledge Bros. Lumber Co.* v. *Wenatchee Land Co.,* 122 Minn. 266, 142 N. W. 305; *Great Western Machinery Co.* v. *Smith,* 87 Kan. 331, 124 Pac. 414; *Whitlow* v. *Nashville, C. & St. L. Ry. Co.,* 114 Tenn. 344, 84 S. W. 618; *Leyner Engineering Works* v. *Kempner,* 163 Fed. 605. Rhode Island is the only State, to which our attention has been called, which, since *Cristilly* v. *Warner,* has held contrary to the current of authority and in harmony with its former decision. *McLay* v. *Slade,* 48 R. I. 357, 138 Atl. 212. The doctrine of *Huntington* v. *Attrill* has thus become generally the established law. We said in *Cristilly* v. *Warner, supra:* "In construing a for-

eign statute, we accept the construction of the statute adopted by the highest tribunal of the jurisdiction of the statute." As a general rule this is correct. But when it has determined what is the substance of the obligation involved and that its enforcement would not involve the penal law of another State, in the international sense, it must enforce it, for the particular inquiry is as to a matter of general jurisprudence whose decision cannot be controlled by the law of another State. If we were bound by the construction accorded this statute by the court of Massachusetts our conclusion must be the same for that court has since *Cristilly* v. *Warner* announced its accord with *Huntington* v. *Attrill.* It indicated its view in 1914 in *Boott Mills* v. *Boston & M. R. Co., supra,* when it said: "It is not necessary to decide whether this kind of action is penal in the international sense, as are cases where the Commonwealth alone institutes and prosecutes an action and receives the benefit of a fine." In 1921, in *Sullivan* v. *Hustis,* 237 Mass. 441, 448, 130 N. E. 247, it said of this statute: "A statute manifestly intended to protect human life and to impose an extraordinary civil liability, not existing at common law, upon those causing death, by subjecting them to a private action for recovery of damages for the pecuniary benefit of the family of the deceased, not inuring in any particular to benefit the State, is not criminal but has important remedial features." See also *Huntington* v. *Attrill,* 146 U. S. 657, 675, 13 Sup. Ct. 224; *Putnam* v. *Savage,* 244 Mass. 83, 138 N. E. 808. The Massachusetts court would thus construe this statute to be not penal in the international sense. We concur in this conclusion. The question decided controls the question of public policy. *Cristilly* v. *Warner* is overruled.

There is error, the judgment is set aside and the

cause remanded to be proceeded with in accordance with law.

In this opinion the other judges concurred.