THEODORE LAPINSKI *v.* JOSEPH COPACINO.

MALTBIE, C. J. BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 5—decided June 21, 1944.

*John J. Casale,* for the appellant (defendant).

*Fleming James, Jr.,* with whom were *Sidney S. Cassel* and, on the brief, *Thomas I. Emerson,* of the

New York bar, *David London*, of the Minnesota bar, *Edward H. Hatton*, of the Illinois bar, and *William B. Sleigh, Jr.*, of the Massachusetts bar, for the intervenor-appellee (administrator of the Office of Price Administration).

*Joseph J. Davis* appeared for the appellee (plaintiff).

MALTBIE, C. J. The plaintiff, a tenant in a building of the defendant, his landlord, located in Torrington, in the Waterbury defense area, brought this action to the Court of Common Pleas, seeking to recover damages on the ground that the defendant had demanded and received rent from him for several months in an amount in excess of the maximum fixed by the regulations of the federal Office of Price Administration under the provisions of the Emergency Price Control Act of 1942. 56 Stat. at Large, Chap. 26, p. 23; 50 U. S. C. App. § 901 et seq. (Sup. 1941-1943). It is not questioned that the premises were within an area in which the provisions of the act applied. Despite the defendant's contention that the act was not enforceable in a state court, the court gave judgment for the plaintiff, and from that judgment the defendant has appealed. He has renewed before us his contention that the act was not enforceable in the Court of Common Pleas, and claims also that the damages awarded were excessive and unconstitutional as amounting to the imposition of an excessive fine. Section 205(e), so far as material to the issues before us, reads as follows: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action

either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States. Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid."

The record suggests certain questions as to the jurisdiction of the Court of Common Pleas over the subject matter of the action, and, although the defendant does not raise them, we must take cognizance of them before we can go further with the case. *Marcil* v. *Merriman & Sons, Inc.*, 115 Conn. 678, 682, 163 Atl. 411. Section 4(a) of the act makes it unlawful for any person to demand or receive rent in an area to which the act applies in violation of any duly established price regulation or schedule; and § 205(c) provides that United States District Courts shall have jurisdiction of criminal proceedings for violations of § 4 "and, concurrently with State and Territorial courts, of all other proceedings under section 205 of this Act." It was clearly within the intent of the Congress that state courts should have jurisdiction of actions brought by tenants for a recovery based upon such an overcharge of rent as occurred in this case. See *Galveston, H. & S. A. Ry. Co.* v. *Wallace*, 223 U. S. 481, 490, 32 Sup Ct. 205; *St. Louis, B. & M. Ry. Co.* v. *Taylor*, 266 U. S.

200, 208, 45 Sup. Ct. 47; *Grubb* v. *Public Utilities Commission,* 281 U. S. 470, 476, 50 Sup. Ct. 374; *Emerson* v. *Lincoln Candies, Inc.,* 173 Misc. 531, 532, 17 N. Y. S. (2d) 851; affd., 287 N. Y. 577, 38 N. E. (2d) 234; *Forsyth* v. *Central Foundry Co.,* 240 Ala. 277, 281, 198 So. 706; *Adair* v. *Traco Division,* 192 Ga. 59, 62, 14 S. E. (2d) 466. It is true that § 256 of the Judicial Code of the United States (36 Stat. at Large, p. 1161, 28 U. S. C. § 371) vests in the courts of the United States exclusive jurisdiction "of all suits for penalties and forfeitures incurred under the laws of the United States," and that the Supreme Court has not readily construed federal statutes as creating exceptions to this provision. *United States* v. *Mooney,* 116 U. S. 104, 6 Sup. Ct. 304; *Lees* v. *United States,* 150 U. S. 476, 14 Sup. Ct. 163. In the case last cited, however, it is recognized that special statutory provisions may create exceptions to the general rule. We need not inquire whether the action before us is one for a penalty or forfeiture within the scope of § 256, because, if it were, the explicit terms of the provision of § 205(e), that any action under it might be brought in any court of competent jurisdiction, would create an exception. Our Court of Common Pleas has exclusive jurisdiction of civil actions for legal relief wherein the matter in demand shall exceed $100 and shall not exceed $2500. General Statutes, Sup. 1941, § 808f. The defendant has not claimed, and could not well claim, that, as far as Congressional action is concerned, the Court of Common Pleas could not rightly entertain this action.

The defendant invokes the principle that one independent sovereignty will not lend its courts to the enforcement of the provisions in the statutes of another sovereignty which are strictly penal, a principle which applies as between different states. *Cristilly* v. *Warner,* 87 Conn. 461, 463, 88 Atl. 711; 3 Beale, Con-

flict of Laws, p. 1639. It can well be maintained that it is no proper function of the judicial machinery of one state to lend itself to the enforcement of the strictly penal provisions of the statutes of another state. In fact, serious administrative difficulties would be presented should the attempt be made. Where the nature of the statute is such that it may be invoked by an individual for his personal gain, the situation presented is somewhat different. In this state we take a broad view of the extent to which our courts should go in the enforcement of individual rights arising under the statutes of another state. *Daury* v. *Ferraro,* 108 Conn. 386, 143 Atl. 630; *Reilly* v. *Pepe Co.,* 108 Conn. 436, 445, 143 Atl. 568; *Broderick* v. *McGuire,* 119 Conn. 83, 93, 174 Atl. 314. Where the immediate redress to be afforded is to the individual, many of the reasons which stand in the way of enforcing strictly penal statutes are inapplicable.

In discussing the somewhat similar conclusion reached in a number of jurisdictions that the courts of one sovereignty will not enforce the revenue laws of another, Professor Beale (op. cit., p. 1637), noting that the reasons why one state will not enforce penal statutes of another are rarely stated, quotes from the concurring opinion of Judge Learned Hand in *Moore* v. *Mitchell,* 30 Fed. (2d) 600, 604, affirmed on another ground, 281 U. S. 18, 50 Sup. Ct. 175. In that case the treasurer of Indiana sought to recover money claimed to be due that state as taxes on property which the owner, since deceased, had neglected to return for assessment, but the action was dismissed. Judge Hand said: "While the origin of the exception in the case of penal liabilities does not appear in the books, a sound basis for it exists, in my judgment, which includes liabilities for taxes as well. Even in the case of ordinary municipal liabilities, a court will not recog-

nize those arising in a foreign state, if they run counter to the 'settled public policy' of its own. Thus a scrutiny of the liability is necessarily always in reserve, and the possibility that it will be found not to accord with the policy of the domestic state. This is not a troublesome or delicate inquiry when the question arises between private persons, but it takes on quite another face when it concerns the relations between the foreign state and its own citizens or even those who may be temporarily within its borders. To pass upon the provisions for the public order of another state is, or at any rate should be, beyond the powers of a court; it involves the relations between the states themselves, with which courts are incompetent to deal, and which are intrusted to other authorities. It may commit the domestic state to a position which would seriously embarrass its neighbor. Revenue laws fall within the same reasoning; they affect a state in matters as vital to its existence as its criminal laws. No court ought to undertake an inquiry which it cannot prosecute without determining whether those laws are consonant with its own notions of what is proper."

In *Claflin* v. *Houseman,* 93 U. S. 130, 23 L. Ed. 833, wherein the right of an assignee in bankrupty to sue in a state court to recover assets of the bankrupt was upheld, the court said (p. 136): "The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty. Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State,—concurrent as to place and persons, though distinct as to subject-matter. Legal or equitable rights, acquired under either system of laws, may

be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under State laws, may be prosecuted in the State courts, and also, if the parties reside in different States, in the Federal courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the State courts, competent to decide rights of the like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, if it sees fit, give to the Federal courts exclusive jurisdiction. . . . This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court. The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent."

In the *Second Employers' Liability Cases*, 223 U. S. 1, 32 Sup. Ct. 169, the Supreme Court of the United States reversed a decision of this court in which we had sustained the Superior Court in refusing to take juris-

diction of a case arising under the federal Employers' Liability Act. *Mondou* v. *New York, N. H. & H. R. Co.,* 82 Conn. 373, 73 Atl. 762; and see *Hoxie* v. *New York, N. H. & H. R. Co.,* 82 Conn. 352, 73 Atl. 754. There was in the act in question no specific provision giving jurisdiction over proceedings under it to state courts. The Supreme Court of the United States held (p. 57) that the suggestion in our opinion that the act of Congress in question was not in harmony with the policy of Connecticut and that therefore our courts could decline jurisdiction was "quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State." The court also said (p. 58): "The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication."

Again the court, speaking of an action in a state court under the federal Employers' Liability Act, said: "Moreover the proposition is in conflict with an essential principle upon which our dual constitutional system of government rests, that is, that lawful rights of the citizens, whether arising from a legitimate exercise of state or national power, unless excepted by express constitutional limitation or by valid legislation to that effect, are concurrently subject to be enforced in the courts of the State or nation when such rights come within the general scope of the jurisdiction conferred upon such courts by the authority, State or nation, creating them. This principle was made the basis of the

first Federal Judiciary Act and has prevailed in theory and practice ever since as to rights of every character, whether derived from constitutional grant or legislative enactment, state or national. In fact this theory and practice is but an expression of the principles underlying the Constitution and which cause the governments and courts of both the Nation and the several States not to be strange or foreign to each other in the broad sense of that word, but to be all courts of a common country, all within the orbit of their lawful authority being charged with the duty to safeguard and enforce the right of every citizen without reference to the particular exercise of governmental power from which the right may have arisen, if only the authority to enforce such right comes generally within the scope of the jurisdiction conferred by the government creating them." *Minn. & St. Louis R. R. v. Bombolis,* 241 U. S. 211, 221, 36 Sup. Ct. 595.

It is true that in *Douglas v. New Haven R. Co.,* 279 U. S. 377, 49 Sup. Ct. 355, it was held that the courts of a state are not bound to take jurisdiction under the federal Employers' Liability Act where there is a valid excuse. The excuse in that case was a provision in the state law which gave the court discretion whether or not to entertain an action of the particular type of that in question. See *Miles v. Illinois Central R. Co.,* 315 U. S. 698, 703, 704, note, 62 Sup. Ct. 827. No such excuse exists in this case. The plaintiff is seeking a recovery which will inure to his individual benefit alone, and there are not presented the practical difficulties which would be presented were the proceeding one to enforce a strictly penal provision; the state court is not lending itself to the enforcement of the law of another sovereignty, because the law it applies, though of federal origin, is just as much the law of this state as a statute enacted by our own legislature; and

Congress, by granting jurisdiction to state courts, has made them instruments for interpreting the public policy of the nation in the matter at hand, thus obviating the underlying reason why one state might hesitate to enforce the statutes of another which are of a penal nature, even though an individual is authorized to bring the action. The Court of Common Pleas acted properly in hearing and adjudicating the issues.

The plaintiff had occupied the premises under a month-to-month tenancy since April 1, 1939, paying rent at the rate of $12 a month. The defendant purchased them on November 26, 1941. On December 1 he informed the plaintiff that beginning on January 1, 1942, the rent would be $15 a month, and thereafter to the time of the bringing of this action the plaintiff paid that sum. In the Waterbury defense area, under the regulations of the Office of Price Administration, rent paid on April 1, 1941, fixed the maximum rent which might be charged, and the effective date of the regulation was June 1, 1942. 7 Fed. Reg. 4041; 8 Fed. Reg. 7329. When the defendant, as required by the provisions of the act, registered the amount of rent received as of April 1, 1941, he falsely stated it to be $15 a month; he purposely did this in order to obtain the excessive rent; and when the plaintiff called his attention to the error he refused to correct the statement, claiming that no one could dictate to him the amount of rent he could charge and telling the plaintiff that, if he was dissatisfied, he could move out. This action was brought in February, 1943. The trial court gave judgment for the plaintiff to recover $50 for each of seven monthly overpayments of rent, together with $75 as attorney's fees. The defendant contends that the provision for a recovery of either $50 or treble the amount of the overcharge merely fixes a maximum which may be recovered, leaving it to the discretion of

the court to award a less amount, according to the culpability of the defendant.

The language of the statute is that the person aggrieved "may bring an action either for $50 or for treble the amount" of the overcharge. This is not at all the language the Congress would have been likely to use had it intended that the trial court should give judgment for such sum as it might deem fitting, not exceeding the amounts designated. Had it so intended, one would have expected the statute expressly to give a discretion to the trial court or to provide that the aggrieved party should recover "just damages not exceeding" the amounts named, as in our statute giving damages for death by wrongful act; General Statutes, Cum. Sup. 1939, § 1430e; and had it intended the amount to be measured by the degree of culpability, it might easily have so stated, as is done in the statute of Massachusetts giving damages for wrongful death, where it is provided that, within certain limits, damages against the guilty person are "to be assessed with reference to the degree of his culpability." See *Daury* v. *Ferraro,* 108 Conn. 386, 388, 143 Atl. 630. The reason for the provision for a recovery of $50 or treble the amount of the overcharge, whichever should be the greater, was undoubtedly to deter improper practices, and it may fairly be assumed that the Congress had in mind the fact that such a purpose would be far better effectuated if the injured person could be assured of a recovery of at least $50 than if, in bringing such an action, with all its accompaniments of inconvenience, loss of time, expense, and the like, he could expect to recover only such sum as the trial court in its discretion might see fit to award. The reasoning of the Court of Appeals for the District of Columbia, which, in *Bowles* v. *American Stores,* 78 U. S. App. D. C. 238, 139 Fed. (2d) 377, construed the act

as entitling an injured party to recover for each offense as of right either $50 or treble the amount of overcharge, whichever is the greater, is very convincing. Incidentally, we note that in that case *Hall* v. *Chaltis*, (D. C.) 31 Atl. (2d) 699, the only authority relied on by the defendant to support his claim, was in effect overruled.

The defendant claims that there was but a single offense and consequently the recovery should have been limited to $50. Section 205(e) provides: "For the purposes of this section the payment or receipt of rent . . . shall be deemed the buying or selling of a commodity, as the case may be." There seems to be little room to question that, by this language, the Congress intended that each payment or receipt of rent should constitute a separate offense, even in the case of a lease which stipulates a rent for its entire duration payable in part at periodic intervals. The act is, as shown by its title, an emergency act, brought about by war conditions; certainly the Congress could never have intended that, under such a lease, the offense should not be complete until at the expiration of the tenancy all the rent had been paid; nor is it a reasonable view that, in an action based on the first payment made, the amount recoverable for the whole duration of the lease would be only $50 or treble the amount of the overcharge involved in that particular payment; nor, in view of the language of the section, can we suppose that at that time treble the amount of the aggregate of overcharges during the future duration of the lease would be recoverable. We hold that the damages recoverable are to be based upon each payment of rent. *Pratt* v. *Hollenbeck*, 48 Pa. D. & C. 303, 317. Certainly that is the clear effect of the act as regards a month-to-month tenancy in this state, for by our law under such a tenancy each

month's occupancy constitutes a separate leasing. General Statutes, § 5021; *Corrigan* v. *Antupit,* 131 Conn. 71, 76, 37 Atl. (2d) 697.

The final contention of the defendant is that the amount awarded, exclusive of the allowance for attorneys, is so disproportionate to the offense committed as to be violative of the provisions of the constitution of the United States and of this state, that excessive. fines shall not be imposed. Const. U. S. Am. VIII; Const. Conn. Art. I § 13. As the award accorded with the amount provided in the act, this claim is in effect that its provision for a recovery of at least $50 for each offense is in itself unconstitutional. We need not inquire whether recovery in such a case as this is to be regarded as a "fine" within these constitutional provisions. In *State* v. *Griffith,* 83 Conn. 1, 74 Atl. 1068, this court sustained the conviction and sentence of the defendant, the agent of a moneylender, for violation of our statutes against usury. The information contained six counts; three of these alleged loans, each to a different person, in the amount of $26, at a usurious rate of interest, and three alleged the acceptance of notes given for the same loans in amounts greater than the sums actually lent. The trial court imposed on each count a fine of $1000, which was the maximum fine provided in the statute violated. In sustaining the imposition of these penalties, we said (p. 4): "The amount of the fine which the legislature may properly impose depends largely upon the object designed to be accomplished by the imposition of the fine, and the widest latitude is to be given to the discretion and judgment of the legislature in determining the amount of the fine necessary to accomplish that object. *Southern Express Co.* v. *Commonwealth,* 92 Va. 59, 22 S. E. 809; *Blydenburgh* v. *Miles,* 39 Conn. 484, 497. It is only in case of a plain conflict between a provision of

the constitution and an enactment of the legislature that the courts will interfere. *State* v. *Main,* 69 Conn. 123, 37 Atl. 80. We say in this case, as we said in *Blydenburgh* v. *Miles,* supra: 'In looking at this record we are unable to say that the penalty is so disproportioned to the offense as to justify us in holding the law to be void.' " Our decision in the *Griffith* case was affirmed in the United States Supreme Court, but upon other points. *Griffith* v. *Connecticut,* 218 U. S. 563, 31 Sup. Ct. 132; see also *State* v. *Miglin,* 101 Conn. 8, 12, 125 Atl. 250. In *Gulf, Colorado etc. Ry.* v. *Texas,* 246 U. S. 58, 38 Sup. Ct. 236, the Supreme Court affirmed the judgment of a Texas Court of Civil Appeals upholding a fine of $22,400 imposed upon a railway for two hundred and twenty-four consecutive failures to stop its trains at a county seat as an order of the Texas railroad commission had required. Certainly a minimum recovery of $50 for each violation of the act cannot be said to be so unreasonable as to be beyond the power of the Congress to provide, nor could the fact that the penalties for successive violations amount to so large a sum in the aggregate when compared to the total of the overcharges, as they did in this case, constitute a violation of the constitutional provisions in question.

There is no error.

In this opinion the other judges concurred.