JAMES K. WALSH ET AL. *v.* ELI GURMAN.

ROBERT E. KINIRY *v.* ELI GURMAN.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued March 8—decided April 12, 1945.

*George E. Beers* and *Israel Poliner,* with whom, on the brief, was *William L. Beers,* for the appellant (defendant).

*J. Stephen Knight,* with whom were *Arnold M. Sweig* and, on the brief, *William B. Sleigh, Jr.,* for the appellee (Chester Bowles, Price Administrator).

*Harry Koletsky,* for the appellee (plaintiff Kiniry).

*Robert B. Vining,* with whom, on the brief, was *David M. Reilly,* for the appellee (plaintiff Illg).

BROWN J.  In the case of *Walsh* v. *Gurman,* two of the original plaintiffs filed withdrawals, so that Illg is the sole plaintiff in that action.  The plaintiff in each of these two cases, a roomer in a lodginghouse in New Haven operated by the defendant, brought action seeking to recover damages on the ground that the defendant had demanded and received room rent from him for a number of weeks in an amount in excess of the maximum fixed by the regulations of the federal office of price administration under the provisions of the Emergency Price Control Act of 1942.  56 Stat. at Large, Chap. 26, p. 23; 50 U. S. C. App. § 901 et seq. (Sup. 1941-1943).  The facts are undisputed.  Under an agreement running indefinitely from week to week, the defendant demanded and received and the plaintiff Illg, as occupant of a furnished room in the defendant's house, paid him, for thirty-eight weeks from August 1, 1942, to April 24, 1943, $5 each week, in violation of the $4 maximum established by the applicable regulation of the office of price administration.  Similarly, the plaintiff Kiniry for twenty-one weeks from November 27, 1942, to May 1, 1943, paid to the defendant $6 each week, in violation of the $5 maximum prescribed for the room which he occupied.

Section 205(e) of the act (50 U. S. C. App. § 925 [e] [Sup. 1941-1943]) then in effect provided: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is

the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States." Under the provisions of this statute, the court rendered judgment for the plaintiff in each case to recover $50 for each of the weekly over-payments he had made. The defendant has appealed from both of these judgments, challenging the amount of the award, the constitutionality of the statute, and its applicability, in consequence of a subsequent amendment.

In the recent case of *Lapinski* v. *Copacino,* 131 Conn. 119, 38 Atl. (2d) 592, upon appeal from a judgment of the Court of Common Pleas awarding the plaintiff, as a tenant of the defendant's building, $50 for each of seven monthly payments of rent in excess of the amount fixed by regulations under the Emergency Price Control Act of 1942, we held that (1) the Court of Common Pleas could rightly entertain the action; (2) the court did not err in awarding $50 for each of the seven monthly overpayments; and (3) the recovery was not so excessive as to be beyond the power of Congress, nor could the fact that the penalties for successive violations amounted to so large a sum in the aggregate when compared to the total of the overcharges constitute a violation of the prohibition of either the state or federal constitution against the imposition of excessive fines. Recognizing the authority of this decision, the defendant has restricted his prin-

cipal argument to the claim that, except as to (1) above, the present cases are to be distinguished upon their facts from the *Lapinski* case. The factual differences upon which he relies are, first, that in the *Lapinski* case the plaintiff occupied the defendant's premises under a month-to-month tenancy, while here each of the plaintiffs occupied a room in the defendant's house under an agreement running indefinitely from week to week; and second, that there the award, based on a seven-month period, was $350, while here the awards to the plaintiffs were $1900, based on a thirty-eight-week period, and $1050, based on a twenty-one-week period, respectively. The vital question is whether these differences in the factual situation are such that our decision in the *Lapinski* case is inapplicable and the judgments appealed from erroneous.

In the *Lapinski* case (p. 131), holding that "the damages recoverable are to be based upon each payment of rent," we went on to say: "Certainly that is the clear effect of the act as regards a month-to-month tenancy in this state, for by our law under such a tenancy each month's occupancy constitutes a separate leasing. General Statutes, § 5021." Predicating his argument upon this statement, 'the defendant contends that, since in that case there was a month-to-month tenancy, by the express provision of the statute it was necessary to construe the occupancy as one under separate "leases for one month only," and therefore not a continuous leasing but a series of successive independent terms; and he claims that therefore the decision in that case is not conclusive that either plaintiff here, where occupancy was for an indefinite term upon the payment of a fixed sum weekly, is entitled to an award of more than a single penalty of $50 for the defendant's violation of the regulations. That the

effect of our decision in the *Lapinski* case is not to be so restricted is fairly apparent from our further statement (p. 131) that "Congress intended that each payment or receipt of rent should constitute a separate offense, even in the case of a lease which stipulates a rent for its entire duration payable in part at periodic intervals," amplified as it is by our reference to the war emergency which the act was designed to meet and the consequent need for the construction adopted.

That this result is within the intent of the regulations under the act, the validity of which is not challenged, appears from their wording. Section 1388.1904 (7 F. R. 4921) provides in part: "Maximum Rents. This section establishes separate maximum rents for different terms of occupancy (daily, weekly or monthly) and numbers of occupants of a particular room." The section then goes on to prescribe concerning "maximum rents for rooms in a hotel or rooming house"; and section 1388.1913 (7 F. R. 4922) states that "(12) The term 'term of occupancy' means occupancy on a daily, weekly or monthly basis." The language of § 205(e) of the act is clear and unambiguous that under it the receipt of rent by a landlord constitutes the sale of a commodity which, when the amount so paid exceeds the price fixed by the regulation, entitles the tenant to his action. The references throughout are to separate violations. Accordingly, not only was the initial overcharge in each case clearly a violation but the repetition of the overcharge for each succeeding week was no different and constituted another violation. The tenant could have brought a separate action for each such violation. It is therefore reasonable and consistent with the purposes of the act to permit a cumulative recovery in a single action. The greater recovery allowed for persistent and repeated violations is justified by the restraint thereby imposed

upon prospective violators seeking to defeat the purpose of the legislation. For this reason, as well as for the others above stated, we are unable to agree with the conclusion of the court in such cases as *McCowen* v. *Dumont*, 54 Fed. Sup. 749, relied upon by the defendant, holding that the single "agreement whereby right of occupancy is given," rather than the successive actual periodic rental payments made, constitutes the "selling" of the "commodity" of the right of occupancy. The instant cases are not distinguished from the *Lapinski* case on the ground that here the rent payments were weekly instead of monthly.

In the *Lapinski* case the penalties for seven monthly overcharges of $3 each totaled $350. Here the penalties for thirty-eight weekly overcharges of $1 each aggregated $1900, in one case, and for twenty-one such overcharges, $1050, in the other. That the difference between the total overcharges and the total penalties awarded in each of the instant cases was greater than the corresponding difference in the *Lapinski* case, where the plaintiff had judgment, does not preclude judgments for the plaintiffs here. For the reasons pointed out in that opinion, the amount awarded in either of the instant cases is not so disproportionate to the offense committed as to be violative of the provision of either the federal or state constitution that excessive fines shall not be imposed. Const. U. S. Am. VIII; Const. Conn. Art. I § 13.

The alternative claim of the defendant is that, by reason of the disproportion between the act and the penalty, the judgment in each of these cases is erroneous because it deprives him of his property without due process of law in violation of his rights under the fifth amendment of the constitution of the United States. This also finds its answer in our reasoning referred to above: the test is the reasonableness of the

method Congress adopted by enacting the statute in question. In determining whether such penalties are so severe, oppressive, and unreasonable as to violate the due process clause, they should be tested not by comparison with the overcharges in particular instances but by the public interest in having the prices uniformly adhered to and the relation of the penalties to that object. *St. Louis, Iron Mt. & Southern Ry. Co.* v. *Williams,* 251 U. S. 63, 67, 40 Sup. Ct. 71. Neither of the instant cases is distinguishable from the *Lapinski* case by reason of the difference in the total of the excess payments exacted, with relation to the aggregate penalty imposed.

These actions were brought and tried prior to June 30, 1944, but judgment for the plaintiff was entered in each subsequent to that date. Therefore they were "pending" on June 30, 1944, the date on which the Stabilization Extension Act of 1944 (58 Stat. at Large, Pt. 1, p. 632, Chap. 325) became effective. Section 108 of that act substantially amended § 205(e) of the Emergency Price Control Act, subsection (b) of § 108 limiting the liability of defendants in certain respects in cases like the present and giving the administrator the right to sue where a buyer authorized to sue for a violation either fails to do so within thirty days after it occurs or is not entitled for any reason to bring the action. 50 U. S. C. App. § 925(e) (Sup. 1941-1945). As a result of the enactment of this provision, three types of suit have since been permissible under § 205(e) as amended: (1) a consumer action; (2) an administrator's action where the consumer fails to sue within thirty days; (3) an administrator's action where the consumer is otherwise not entitled to sue. Section 108(c) of the 1944 act provides: "The amendment made by subsection (b), in so far as it relates to actions by buyers or actions which may be brought by

the administrator only after the buyer has failed to institute an action within thirty days from the occurrence of the violation, shall be applicable only with respect to violations occurring after the date of enactment of this Act. In other cases, such amendment shall be applicable with respect to proceedings pending on the date of enactment of this Act and with respect to proceedings instituted thereafter." Claiming that these actions were "other cases" within the terms of this subsection and that therefore the plaintiff's right of recovery in each is limited, as provided by the 1944 act, either to not more than three times the amount of the overcharges or to not less than $25 nor more than $50, as the court in its discretion might determine, the defendant moved that the judgment in each case be reopened. The trial court's denial of these motions and its ruling that the amendment is not applicable to these actions, which were pending at the time of its adoption, are assigned as error. The court's rulings were correct. The language of subsection (c) is clear and unambiguous. It is manifest that the words "other cases" are only applicable to actions of the third type above referred to. See *Bowles* v. *Franceschini,* 145 Fed. (2d) 510, 514. Those are actions by an administrator which concern "purchases in the course of trade or business." *Bowles* v. *Glick Bros. Lumber Co.,* 146 Fed. (2d) 566, 571. The recent decision by the United States Circuit Court of Appeals for the First Circuit in *Thierry* v. *Gilbert,* 147 Fed. (2d) 603, handed down since our decision in *Lapinski* v. *Copacino,* supra, constitutes authority for this conclusion as well as for our other conclusions above discussed.

There is no error in either case.

In this opinion the other judges concurred.