EDDIE YOUNG *v.* DOMINIC MARGIOTTA ET AL.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND INGLIS, Js.

430

Argued December 6, 1949—decided February 7, 1950.

*Walter W. Smyth,* with whom, on the brief, was *John H. Cassidy,* for the appellant (plaintiff).

*Patrick DeLeon,* with whom was *Francis Summa,* for the appellees (defendants).

MALTBIE, C. J. The plaintiff, a lessee of certain premises, seeks in this action to recover claimed overcharges of rent under the federal Emergency Price Control Act of 1942; 56 Stat. 23, as amended, 50 U. S. C. App. § 901 et seq.; and under the Housing and Rent Act of 1947. 61 Stat. 193, as amended, 50 U. S. C. App. § 1881 et seq. (Sup. 2). The trial court gave

judgment for the defendants and the plaintiff has appealed.

Previous to September 1, 1942, the Meriden Savings Bank owned a lot in Waterbury on which was a four-story building containing three stores and fifteen apartments. The apartments were registered with the proper officers as housing accommodations, but the stores were not. In August, 1942, the plaintiff leased one of the stores from the bank on an oral month-to-month tenancy. On September 1, the bank conveyed the premises to the defendant Dominic Margiotta; subsequently he conveyed them to his sister-in-law, Evelyn Margiotta; but the property was at all times held for the benefit of the members of the family. The plaintiff owned and operated a Chinese restaurant a few blocks away at which he employed Chinese as cooks and assistants, the number varying from three to seven. Because of the housing shortage in Waterbury and the inability of the plaintiff to find a place for his employees to live, he rented the store in order to provide them with sleeping quarters. He divided the store into four rooms by temporary partitions, hung curtains, installed beds, bureaus and dressers and furnished the necessities for sleeping accommodations; and he equipped the premises with a wash bowl with running water, but not with a bath, with a stove for heating, a toilet, electricity for a little lighting and other such simple facilities as would make the premises suitable as a place for his employees to sleep. Thereafter they lived there, keeping trunks, suitcases and personal belongings, but not occupying the premises during the day. They paid no rental to the plaintiff but the provision of the sleeping quarters was a part of the compensation they received. The plaintiff used the premises also for storing boxes and extra restaurant equipment. There was no external evidence

that they were used for business purposes; the front window was dirty, unwashed and painted, and the front door was rarely opened. The defendants knew, or should have known, that, aside from the use of the place for storage of some supplies, plaintiff's employees slept there.

The trial court concluded that the premises were rented as commercial property, that they were used as an adjunct of the plaintiff's business and therefore for commercial purposes and that the plaintiff failed to prove that they were housing accommodations within the statutes referred to above.

The Emergency Price Control Act, in a section permitting a recovery of damages for overcharges of rent, provides that a person who buys a "commodity . . . may, within one year from the date of the occurrence of the violation . . . bring an action against the seller on account of the overcharge." The section goes on to state that the payment or receipt of rent for housing accommodations within the act "shall be deemed the buying or selling of a commodity, as the case may be." 58 Stat. 640, § 108(a), 50 U. S. C. App. § 925(e). The Housing and Rent Act, in giving a specific remedy for overcharges of rent, provides: "Suit to recover such amount may be brought in any Federal, State or Territorial court of competent jurisdiction within one year after the date of such violation." 61 Stat. 199, § 205, 50 U. S. C. App. § 1895 (Sup. 2). In such a leasing as occurred in this case each overcharge of rent constituted a separate violation of the applicable act. *Lapinski* v. *Copacino,* 131 Conn. 119, 131, 38 A. 2d 592; *Walsh* v. *Gurman,* 132 Conn. 58, 61, 42 A. 2d 362. The acts created a cause of action unknown to the common law; the provision that the actions must be brought within one year was a limitation upon the liability, not the remedy; and the defendants were

entitled to the benefit of it without special pleading. *Matheny* v. *Porter,* 158 F. 2d 478, 479; *Thompson* v. *Taylor,* 62 F. Sup. 930, 931; *DeMartino* v. *Siemon,* 90 Conn. 527, 528, 97 A. 765; *New Britain Lumber Co.* v. *American Surety Co.,* 113 Conn. 1, 7, 154 A. 147; *Baker* v. *Baningoso,* 134 Conn. 382, 385, 58 A. 2d 5.

Ordinarily, the time of bringing an action is the date when the writ is served on the defendant. *Consolidated Motor Lines, Inc.* v. *M & M Transportation Co.,* 128 Conn. 107, 109, 20 A. 2d 621. The writ in this action was returnable on the first Tuesday of June, 1948. The defendants are described in it as residents of Waterbury, and the action was one in personam with the garnishment as a means of enforcing any judgment which might ultimately be secured against them. The officer's return on the writ shows that on May 14 and 17, 1948, he garnished moneys of the defendants in two banks in Waterbury, but fails to show any service upon them. In such a case the service of the garnishment does not begin the action; that occurs only when the defendants are brought within the jurisdiction of the court by service of a writ upon them or by their voluntary appearance. *Sanford* v. *Dick,* 17 Conn. 213, 216; *Studwell* v. *Cooke,* 38 Conn. 549, 551. Appearance for the defendants was filed on May 28, 1948. The plaintiff could recover only on the basis of payments of rent made within one year before that date. The Housing and Rent Act superseded the Emergency Price Control Act as regards renting and took effect "on the first day of the first calendar month following the month" in which the act was enacted, and it was approved June 30, 1947. 61 Stat. 201, § 212, 50 U.S.C. App. § 1902 (Sup. 2). The day of its approval is to be deemed the day of its enactment. *Gardner* v. *Collector,* 6 Wall. (73 U. S.) 499, 504, 18 L. Ed. 890; *Louisville* v. *Savings Bank,* 104 U. S. 469, 479, 26 L. Ed. 774.

Consequently it took effect on July 1, 1947. As the one-year period for which the plaintiff could recover · began on May 28, 1947, we must consider his rights under both the Emergency Price Control Act and the Housing and Rent Act.

The Emergency Price Control Act, under which, as we have stated, the payment or receipt of rent is to be deemed the buying or selling of a commodity, gives a right of action to the person "who buys such commodity for use or consumption other than in the course of trade or business." 58 Stat. 640, § 108(a), 50 U. S. C. App. § 925(e). If the rental of the building was, then, for use in the course of the plaintiff's trade or business, he cannot recover under the act. *Bowles* v. *Seminole Rock & Sand Co.,* 145 F. 2d 482; *Bowles* v. *Glick Bros. Lumber Co.,* 146 F. 2d 566, 568; *Bowles* v. *Rogers,* 149 F. 2d 1010; *Bowles* v. *Jones,* 151 F. 2d 232, 234; *Bowles* v. *Whayne,* 152 F. 2d 375; *Bowles* v. *Madl,* 153 F. 2d 21; *Bowles* v. *Rock,* 55 F. Sup. 865, 866; *Lightbody* v. *Russell,* 293 N. Y. 492, 58 N. E. 2d 508; *Foley* v. *Day Bros., Inc.,* 320 Mass. 344, 69 N. E. 2d 451; *Bayne* v. *Kingery,* 30 Wash. 2d 922, 195 P. 2d 98. The act contains the following definition: "The term 'housing accommodations' means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, hotels, rooming or boarding house accommodations, and other properties used for living or dwelling purposes) together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property." 56 Stat. 36; 50 U. S. C. App. § 942(f). The regulations adopted under the act contained a provision exempting from housing regulations "dwelling space occupied by domestic servants, caretakers . . . or other employ-

ees to whom the space is provided as part of their compensation and who are employed for the purpose of rendering services in connection with the premises of which the dwelling space is a part." 8 Fed. Reg. 7323, § 1 (2). Under these definitions the rental of dwelling space for employees who do not render services in connection with the premises of which that space is a part constitutes rental of housing accommodations within the act. In *Dixie Pine Products Co.* v. *Bowles,* 159 F. 2d 507 (C. C. A. 5th) the question was whether certain houses built by a manufacturing concern and rentable only to its employees at less than one-quarter of the rents charged for like accommodations were within the provisions of the act, and, upon the basis of its provisions and the administrator's interpretation of them, the court held that they were. This decision was followed in *Dickey* v. *West Boylston Mfg. Co.,* 251 Ala. 19, 21, 36 So. 2d 106. Under these decisions, it is not enough to take rentals out of the act that they aid the tenant in the conduct of some business he is carrying on; they must be used as an integral part of that business. It follows that the plaintiff was entitled to recover under the Emergency Price Control Act for the rentals paid by him from May 28, 1947, to July 1, 1947.

The Housing and Rent Act does not contain the limitation as to use in the course of business. It provides: "Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed . . . shall be liable to the person from whom he demands, accepts, or receives such payment. . . ." 61 Stat. 199, § 205, 50 U. S. C. App. § 1895 (Sup. 2). The only question as regards the application of this provision in the action before us is whether or not the premises rented by the plaintiff were housing accommodations. The act contains the same definition of

"housing accommodations" as the previous act. 61 Stat. 196, § 202(b), 50 U. S. C. App. § 1892(b) (Sup. 2). The section then goes on to define "controlled housing accommodations" as meaning housing accommodations with certain exceptions, none of which are applicable to this case. It follows from what we have said that the premises were housing accommodations within the provisions of the Housing and Rent Act.

While the premises were primarily adapted to commercial uses, it is not found that they were leased as commercial property. On the other hand, it is found that the defendants knew or should have known that, aside from the storage of some supplies, the plaintiff's employees slept there. When the defendants rented and rerented the property from month to month with that knowledge, they "rented" it "for living or dwelling purposes" within the terms of the act. If that were not so, the question whether the act had been violated would be determined upon the basis of the use to which the property rented was adapted or ordinarily put, a test which would do violence to the purpose of the act. See *Brown* v. *Hecht Co.*, 137 F. 2d 689, 691; *Bowles* v. *American Stores, Inc.*, 139 F. 2d 377, 378. This conclusion is supported by the provision in the definition that "housing accommodations" shall include property "used for living and dwelling purposes," a provision which emphasizes actual use as the controlling element. See *Fisher* v. *Michigan Square Bldg. Corporation*, 328 Ill. App. 143, 158, 65 N. E. 2d 473. The predominant use of the premises in the present case was as a housing accommodation, and the incidental use for storage purposes would not take them out of the act. See *Ison* v. *Baker*, 66 F. Sup. 645, 650; *Messer* v. *Mamches*, 71 F. Sup. 197. That the plaintiff did not himself occupy the premises but used them only as a living place for his employees would not pre-

vent a recovery by him; the liability under the act is to the person from whom the defendant "demands, accepts, or receives" the rent, and that was the plaintiff. See *Fleetham* v. *Winter Hill Liquor Store, Inc.*, 319 Mass. 29, 31, 64 N. E. 2d 650.

Upon the facts before us, the trial court was in error in not rendering judgment for the plaintiff upon the basis of overcharges subsequent to May 28, 1947.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.