BOWLES, Price Administrator, v.
WHAYNE et al.

No. 9992.

Circuit Court of Appeals, Sixth Circuit.

Dec. 17, 1945.

(Not presented by oral argument).

George Moncharsh, Fleming James, Jr., David London, and Nathan Siegel, all of Washington, D. C., Walter J. Heddesheimer, of Cleveland, Ohio, and Fritz Krueger, of Louisville, Ky., on the brief, for appellant.

Nelson Helm, Louis Seelbach, Doolan, Helm, Stites & Wood, and Bullitt & Middleton, all of Louisville, Ky., on the brief, for appellees.

Before MARTIN and McALLISTER, Circuit Judges, and FORD, District Judge.

MARTIN, Circuit Judge.

The District Court dismissed a complaint filed by the O. P. A. Price Administrator against the appellees, doing business in Louisville, Kentucky, as the Roy C. Whayne Supply Company. The Administrator sought to recover $20,475, being treble the amount of the excess in consideration over the maximum price established by regulation of the Office of Price Administration for a drag line equipped with an oil engine, sold by appellees in October, 1943, to the Mulzer Construction Company of Chrisney, Indiana.

The facts of the case were succinctly stipulated, as quoted below.[1]

It is conceded that the purchaser, Mulzer Construction Company, has never engaged in the business of buying machinery for resale, and that it bought the drag line machine in question, not for resale, but for use in its business of mining coal.

The issue presented requires the interpretation of Section 205(e) of the Emergency Price Control Act of 1942, 56 Stat. 33, 50 U.S.C.A.Appendix § 925(e), which provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by

[1] "Prior to October 4, 1943, Mulzer Construction Company was the owner of some coal mining properties near Chrisney, Indiana, and desired to operate said properties. The contemplated operations were what is commonly known as 'strip mining,' in which an over-burden of dirt is first removed to expose the underlying coal. The use of a Drag Line machine would be an efficient method of removing the overburden and of actually taking out the coal itself.

"Mulzer Construction Company did not have and had never owned such a machine, but desired to purchase one. It made inquiry of Roy C. Whayne Supply Company, at Louisville, Kentucky, who did not have such a machine in stock. Shortly thereafter, and in early October, 1943, Roy C. Whayne Supply Company learned that two such machines, which had been used by W. Horace Williams Company, contractors of New Orleans, Louisiana, were for sale at Mobile, Alabama, where they had been used in construction work and could be inspected.

"Roy C. Whayne Supply Company notified Mulzer Construction Company to this effect, and Mr. Mulzer (an officer of the company) and Mr. Pershing, who was employed by Roy C. Whayne Supply Company, went to Mobile, where they saw the machine involved in this litigation, and were told by W. Horace Williams Company that the machine had been rebuilt and had been operating very satisfactorily.

"The price of the machine new was $23,350.00. Roy C. Whayne Supply Company bought said machine from W. Horace Williams Company for $17,000.00, and Mulzer Construction Company then bought said machine from the Roy C. Whayne Supply Company for $19,750.00. W. Horace Williams Company was instructed to ship the machine direct to Mulzer Construction Company at Lamar, Indiana, and the Roy C. Whayne Supply Company invoiced the machine to Mulzer Construction Company as a rebuilt machine, and guaranteed the same for a period of sixty days.

"The machine in question is the only machine of this type or kind which Mulzer Construction Company has ever bought. The Mulzer Construction Company did not buy said machine for resale, but, on the contrary, bought the same to use in its business of mining coal. The said machine has been operated for over a year and is the only machine or device which the Mulzer Construction Company has used for the purpose of removing the overburden to expose the seam of coal at the mine of the Mulzer Construction Company near Chrisney, Indiana.

"Mulzer Construction Company is not and never has been in the business of buying machinery for resale."

the court. * * * If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States. * * *"

The District Court upheld the contention of the appellees that, in the statute, the phrase "other than in the course of trade or business" qualifies the words "the person who buys such commodity," with the result that, if the purchase of a commodity is made other than in the course of trade or business of the purchaser, the exclusive right of action is in the purchaser. It was held that the purchase of the drag line machine "was not in the course of trade or business but was for the use of the purchaser."

The trial court announced adherence to its earlier expression in construing the statutory provision in Bowles, Administrator, O. P. A. v. Joseph Denunzio Fruit Co., D.C., 55 F.Supp. 9, 13: "Where a retailer sells to a purchaser for use or consumption the purchaser can sue for the damages authorized by the Act; but where a wholesaler sells to a retailer who buys for resale in the course of trade or business and not for use or consumption, such retailer has no authority to institute the suit, but the right of action in such cases is vested in the Administrator."

In rejecting the construction of the statute for which the Administrator contended, that the purchaser has the right of action only in those cases where the use of the purchased article is not in his trade or business, the District Court pointed to what were considered very unreasonable results necessarily attendant upon such interpretation. Reference was made to the example given in Bowles v. Googins (State District Court of Utah), 1 Price Control Cases, Par. 51.176: "A farmer buys himself a pair of overshoes for general use, and he wears them to irrigate his crops. If he paid over the ceiling price for them, is there any conceivable reason why the OPA should have the cause of action for the overcharge?" Further illustration was offered: "A carpenter buying a saw and hammer to use in his business would not have the right to sue for the price violation, but if he bought them to use for repairs at his residence, or if they were bought by a doctor, both the carpenter and the doctor would have the right to bring the action."

In his memorandum opinion, the District Judge stated that the question had been presented to several District Courts, with different results. Bowles v. Chew, D.C. N.D.Cal., 53 F.Supp. 787, was the first case cited as "well" setting out the viewpoint of the trial court. In that case, however, the motion to dismiss the O. P. A. Administrator's action for treble damages was denied; and, despite the general commentary in his opinion, what seemed uppermost in the mind of the judge who wrote the opinion was that, the legislative purpose being to prevent inflation, it was not intended that the Administrator be limited to suits against "bootleggers" and "black market operators."

The second authority cited by the trial court was Bowles v. Seminole Rock & Sand Co. (S. D. Fla.), 1 Price Control Cases, Par. 51,112. But, on appeal of that case, it was held by the Fifth Circuit Court of Appeals that a railroad's purchases of crushed stone for use in maintaining road beds were of a commodity consumed in course of business; and, hence, if the prices charged exceeded the maximum provided by an O. P. A. regulation, the cause of action arising from such unlawful acts was vested by the Emergency Price Control Act in the Price Administrator alone. Bowles v. Seminole Rock & Sand Co., 5 Cir., 145 F.2d 482.

In the particulars in which the third case cited by the District Judge, Bowles v. Googins (State District Court of Utah), 1 Price Control Cases, Par. 51,176, supports his conclusion, the decision seems to conflict with that of the Eighth Circuit Court of Appeals in Speten v. Bowles, 146 F.2d 602, 604, where it was held that the purchase of harvesting and threshing machinery for carrying on the purchaser's general farming operations is for "use in the course of a trade or business" within the Emergency Price Control Act; and consequently the Price Administrator may sue the seller for treble the amount by which the sale prices exceeded the ceiling prices fixed by the maximum price regulations. The same interpretation of the statute should be applied to the purchase of a drag line machine by a mine operator as is applicable to the purchase of a harvesting and threshing machine by a farmer.

The fourth and last case cited as supporting authority by the District Judge

was Lightbody v. Russell, Sup., 45 N.Y.S. 2d 15. This case was reversed on final appeal to the Court of Appeals of New York, 293 N.Y. 492, 58 N.E.2d 508, 510. The Price Administrator, and not the purchaser of a tractor, was deemed to be the authorized party to sue for treble damages under the statute. The highest New York court pointed out that the statute divides purchasers of commodities into two classes: those who purchase for use in the course of their trade or business, that is for a commercial use; and those who purchase for use or consumption other than in the course of their trade or business, that is for a non-commercial use—each being an ultimate consumer. The court declared: "But it will be noted that the statute confers a cause of action upon the purchaser from a violator of the price regulation only in the event that he is in the latter class. In that connection, it may be noted that the Price Administrator, who is charged with the duty of administration of the Emergency Price Control Act, has officially interpreted the phrase 'in the course of trade or business' as applying to purchases by industrial and commercial consumers as well as to purchases for a resale and in general to buyers engaged in commercial activity for profit. C.C.H. War Service, Price Control, Par. 42,402.16. His interpretation is entitled to great weight. United States v. American Trucking Ass'n, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345. That the foregoing construction conforms to the intent of the Congress in enacting the legislation is indicated by the Senate and House Committee Reports. Senate Report No. 931; 77th Cong. 2nd Sess., p. 8; 88 Congressional Record, Vol. 88, Part I, p. 664, Jan. 26, 1942; Conference Report on Emergency Price Control Act of 1942, 77th Cong. 2nd Sess. 1942, House Report No. 1658, pp. 26–27."

The District Judge noted, but did not follow, the decision in Bowles v. Rock, D.C.Neb., 55 F.Supp. 865. In that case, in construing the section of the Emergency Price Control Act of 1942 in question, it was held that farming is a trade or business within the terms of the Act, with the result that, where farmers had bought equipment at auction in violation of the Act, the Price Administrator had the sole right to sue the seller. See also Bowles v. Silverman, D.C.S.Dak., 57 F. Supp. 990.

We think that Provisional Government of French Republic v. Cabot, D.C.S.D. N.Y., 59 F.Supp. 855, cited by appellees, does not support their argument. The sale of vehicles was made to the Government of a foreign country for exportation to its colonies. The character and status of that Government indicated sufficiently that it was not buying in the course of trade or business. Accordingly, it was properly accorded the right to bring an action for violation of maximum price regulations.

We find irrelevant the dicta of Judge Parker in Bowles v. American Brewery, 4 Cir., 146 F.2d 842, 846, quoted in the brief of the appellees. The issues determined were far afield from the question to be answered here.

We fail to see how the appellees can find comfort in anything said by this court in Bowles v. Farmers Nat. Bank of Lebanon, Ky., 6 Cir., 147 F.2d 425, 428. Indeed, it was there said: "As to all sales for use or consumption in the course of trade or business, that is as to the innumerable transactions in wholesale or *retail* trade, the right of recovery is vested in the Administrator." (Emphasis supplied.) The holding in the case was that the action by the Administrator, being one to recover a penalty, did not survive the death of a person charged with purchasing in violation of the Emergency Price Control Act of 1942.

Cases cited by appellees, pertaining to the sufficiency of service of process upon foreign corporations, involving the issue of whether a course of business had been pursued in a state, are not considered remotely in point: International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 585, 34 S.Ct. 944, 58 L.Ed. 1479; Moore v. Racine Rubber Co., 194 Ky. 106, 111, 238 S.W. 381.

In an action brought under the section of the Emergency Price Control Act with which we are here concerned, the Court of Appeals for the Ninth Circuit held that the Price Administrator could maintain an action for treble damages against lumber wholesalers who exceeded maximum prices in sales, where the buyers purchased for use or consumption in the course of business rather than for resale, inasmuch as the buyers, being in pari delicto, could not sue. Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, 568, 569.

That the District Court committed reversible error, in dismissing the suit of

the Administrator, is further evidenced by the opinion in Bowles v. Rogers, 7 Cir., 149 F.2d 1010, 1011, decided June 12, 1945. In that case, it was said: "There is no question on the record but that the farmers purchased the machinery for consumption in their business of farming. The individual farmer was not the consumer of the tractor as if it were food or clothing, nor was he the consumer who purchased it for use or consumption 'other than in the course of trade or business.' Therefore, the farmer was not entitled to bring the action. If a farmer who is a buyer is not entitled to bring the action, the Administrator may bring it on behalf of the United States. In this view of the statute, courts' of high distinction have concurred. Bowles v. Seminole Rock & Sand Co., 5 Cir., 145 F.2d 482; Speten v. Bowles, 8 Cir., 146 F.2d 602; Lightbody v. Russell, 293 N.Y. 492, 58 N.E.2d 508."

For the reasons heretofore indicated, we think that upon both principle and authority the judgment of the District Court must be reversed. It is so ordered; and the cause is remanded for further proceedings in conformity with this opinion.