### JOHNSON v. FRANK SHERIDAN JONAS & SON et al.

District Court, S. D. New York.
Aug. 1, 1946.

————◆————

Judgment affirmed in 161 F.2d 732.

Robert L. Collins, of New York City, for plaintiff.

Wagner, Quillinan, Wagner & Tennant, of New York City (Joseph Leary Delaney and Edward S. Menapace, both of New York City, of counsel), for defendants.

LEIBELL, District Judge.

Defendants move for a summary judgment on the grounds "that the plaintiff has not the legal capacity to prosecute this action" and that "the complaint fails to

state a cause of action in favor of the plaintiff." The action was commenced by the filing of the complaint with the Clerk of the Court on May 23, 1946. It alleges: Jurisdiction in this Court under § 205(c) and (e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(c, e), and that M.P.R. No. 136 established maximum prices for sales of machinery by wholesalers and retailers. The complaint then pleads the following:

"Third: That on or about the 25th day of May, 1945, defendant, Frank Sheridan Jonas & Son, a dealer in motors, doing business at 120 Wall Street, in the Borough of Manhattan, County of New York, State of New York, sold and delivered to plaintiff the following described property: Two 50 horsepower, rewound and rebuilt, General Electric motors, 50 cycles, 3 phase, speeds 375, 500, 750, 1000 RPM, Ford K Type 1, Serial numbers 87040 and 87042—for use in the plaintiff's principals' herring press business in Iceland, at a price of $3,150.00, not in the course of trade or business.

"Fourth: The maximum legal price for the sale of such commodities by defendant was $2,360.00.

"Fifth: That the defendant has damaged the plaintiff in the sum of $2,370.00, the said sum being treble damages for the overcharge under Section 205(e) of the said Act of 1942, as amended, 58 Statutes 640."

Plaintiff demands judgment—

"(1) In the sum of $2,370.00, three times the aggregate amount by which the prices received by defendant as stated in paragraph Third above, exceeded the maximum prices provided by Regulation No. 136.

"(2) For a reasonable attorney's fee.

"(3) For the costs of suit herein."

Section 205(e) provides in part:

"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action, against the seller on account of the overcharge. * * * If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations."

Plaintiff did not purchase the motors "for use or consumption other than in the course of trade or business." The correspondence annexed to the moving papers shows that G. Thorsteinsson & Johnson Ltd., with which plaintiff, Petur O. Johnson, was associated, purchased the motors for a customer and that the selling price to G. Thorsteinsson & Johnson, Ltd., included their "10% commission as agreed." G. Thorsteinsson & Johnson, Ltd., wrote defendant, Frank Sheridan Jonas & Son, January 16, 1945, urging prompt delivery of the motors to the customers in Iceland, who were described as "the buyers" engaged in producing Herring Oil and Herring Meal, and defendant was informed that "the season is at hand when they will be handicapped considerably if they do not get their motors soon." In a letter dated April 4, 1945, defendant was advised by G. Thorsteinsson & Johnson, Ltd., "our order from Iceland requires that we submit with the invoices a one year's guarantee on these motors." A letter of November 30, 1945, from G. Thorsteinsson & Johnson, Ltd., to Frank Sheridan Jonas & Son states:

"We are referring to the two (2) 50 H.P. electric motors we purchased from you last summer and shipped to Iceland to our client, the herring meal and oil manufacturers Djupavik, Ltd. of Djupavik, Iceland.

"When the motors arrived at destination they were immediately installed by the electrical engineers of the above named firm.

We are sorry to report that these motors were found to be completely unuseable.

\*     \*     \*     \*     \*     \*

"Customer is returning them to New York, having refused to accept them and the motors are now arriving on the 'Buntline Hitch'."

A further letter of March 20, 1946, refers to the early negotiations and to the quotations given by defendant and adds, "We submitted this quotation by cable to our principals in Iceland." The letter also states:

"When the motors arrived in Iceland at destination and were installed it was learned that they were not 50 H.P. $^{250}/_{1000}$ rpm as called for. They therefore did not serve the purpose of our customer and we were forced to accept return of them. We were required to refund the purchase price in full to our customer, including all charges such as freight to and from Iceland, etc. We in turn feel we have access to recovery from you for refund of the purchase price since the motors were not delivered as contracted.

"The above complaints are the most serious. The buyers have, however, made a number of complaints. \* \* \* Aside from losing the confidence of a very good customer in Iceland, we have been placed in an awkward position and required to pay many charges and other expenses in connection with the shipment to and return from Iceland of these motors."

Unquestionably the real purchaser was Djupavik, Ltd. That is further confirmed by paragraph 1 of Djupavik, Ltd.'s letter to G. Thorsteinsson & Johnson, Ltd., dated August 1945, which reads as follows:

"Last autumn you offered to order for us from America 2 motors with transformators for our herring oil factory at Djupavik. You received information about the sizes and the capacity of the required motors, i. e. each of 50 H.P. and a speed transformation of 1:2.5–"

█ The genuineness of the letters has not been questioned. They establish beyond contradiction that plaintiff, Petur O. Johnson, did not buy the two motors in question for his own use, and that his company, G. Thorsteinsson & Johnson, Ltd.,

was buying them for a customer in Iceland, Djupavik, Ltd. The customer intended to use the motors in its herring business. The motors were shipped to Iceland for that purpose and were set up in the herring oil factory of Djupavik, Ltd., at Djupavik, Iceland. For various reasons the customer rejected them and had them re-shipped from Iceland to New York. Under the Emergency Price Control Act and under the decided cases the plaintiff has no cause of action against the defendants, nor has G. Thorsteinsson & Johnson, Ltd., with whom he was associated. Not even the customer, Djupavik, Ltd., of Iceland, has any claim or cause of action against the defendants under the Emergency Price Control Act. Some of the leading cases on this point are Lightbody v. Russell, 293 N.Y. 492, 58 N.E.2d 508 (involving the sale of a tractor); and Bowles v. Cabot, 2 Cir., 153 F.2d 258 (a sale of trucks); Bowles v. Rogers, 7 Cir., 149 F.2d 1010 (a sale of tractors); Bowles v. Whayne, 6 Cir., 152 F.2d 375 (a sale of machinery); Speten v. Bowles, 8 Cir., 146 F.2d 602 (a sale of harvesting and threshing machinery).

█ It is clear from the above cited cases that where machinery is purchased for use in a business (that is, for a commercial use), the purchaser, if charged more than the ceiling price as fixed by the OPA regulations, may not bring an action against the seller under § 205(e). The claim or cause of action is in the OPA Administrator. And unless the plaintiff can qualify under § 205(e) of the Emergency Price Control Act as interpreted by the courts he has no cause of action under the Act, which "establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United States may seek damages in the nature of penalties." See majority opinion of Mr. Justice Murphy in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 1091, 90 L.Ed. 1332. The same principle is recognized in the dissenting opinion of Mr. Justice Rutledge in the same case. The Warner Holding Co. case involved an over-charge for rent where, of course, the tenant may bring the action under § 205(e).

Concerning the Emergency Price Control legislation Mr. Justice Rutledge remarked: "It is not excessive to say that perhaps no other legislation in our history has equalled the Price Control Act in the wealth, detail, precision and completeness of its jurisdictional, procedural and remedial provisions". (Citing Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.)

In granting this motion I have in mind the caution and admonition expressed in two opinions of the Circuit Court of Appeals, this Circuit—Arnstein v. Porter, 2 Cir., 154 F.2d 464, and Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135. In the latter case the appellate court recognized the fact that summary "judgment, wisely used, is a praiseworthy time-saving device." The undisputed facts in this case justify the granting of the motion for summary judgment dismissing the complaint on the merits.