## UNITED STATES *v.* BRUNO.

No. 67. Argued November 22, 1946.—Decided December 9, 1946.

*Stanley M. Silverberg* argued the cause for the United States. With him on the brief were *Solicitor General McGrath, Robert L. Stern, George Moncharsh, David London, Irving M. Gruber* and *Albert J. Rosenthal.*

*George R. Sommer* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

A criminal information was brought against Bruno for having wilfully sold [1] waste paper at prices higher than the ceilings established by Maximum Price Regulation 30.[2] The information contained five counts, each count charging a sale of a carload lot in 1944 at prices above the established ceilings. The jury found Bruno guilty on all five counts. He was sentenced to imprisonment for six months and fined $500. The judgment of conviction was reversed by the Circuit Court of Appeals. 153 F. 2d 843. The case is here on a petition for a writ of certiorari which we granted because of an asserted conflict in principle between the decision below and *United States* v. *Seidmon,* 154 F. 2d 228, in the Seventh Circuit Court of Appeals.

Bruno was in charge of a business, owned by a relative, which bought and sold waste paper. Carrano was a middleman who bought waste paper from Bruno on orders

---

[1] Section 205 (b), Emergency Price Control Act of 1942, 56 Stat. 23, 33, 50 U. S. C. App. Supp. III § 925 (b).

[2] See 7 Fed. Reg. 9732, 8 Fed. Reg. 13049, 17483.

from Carrano's customers. The paper was shipped by Bruno direct to the customers, Carrano paying Bruno the price.

In each of the five sales challenged here, Carrano ordered from Bruno a grade of paper known as No. 1 assorted kraft. In each, Bruno invoiced the shipment as such and charged the ceiling price for that grade of waste paper. Carrano paid Bruno the invoice price. It appears that the orders were subject to inspection and approval of the waste paper by the customers; that they customarily made the inspections on receipt of the shipments; and that if the paper was below the grade at which it had been invoiced, the customers would pay Carrano the lower ceiling price, Carrano debiting Bruno with the difference. Each of the five shipments in question was inspected by the customer on its arrival. It was discovered that each shipment was largely composed of corrugated paper, a grade carrying a lower ceiling price. In three cases, the customers paid Carrano only for the quality of waste paper received. Carrano thereupon debited Bruno with the difference. In two cases, the customer did not complain of the upgrading and Bruno retained the over-charges.[3] Moreover, the debits to Bruno in the three instances mentioned followed on the heels of an investigation by the Office of Price Administration. It also appears that the debits were not shown on Bruno's books. His ledger showed sales, not at the invoice price, but at lower prices. The concealed amounts were explained by Bruno as constituting his commissions on the sales.

The District Court charged the jury that "before you can find him guilty, there must have been in his mind an intention not to set a price and then have it adjusted afterwards according to the truth of the situation, but an intent

---

[3] The Circuit Court of Appeals seemed to proceed on the assumption that in no instance did the ultimate price which was paid exceed the ceiling price.

to fix this price and charge it and get away with it,—an intent to commit the crime, the formation of a purpose in his mind when he did this thing, to get more money for that paper than the ceiling price established by law." [4] The court also charged that there could be no conviction if Bruno did not sell the waste paper "with the intent of receiving higher than ceiling price, and did not actually receive higher than ceiling price."

We think it was proper to submit the case to the jury. The evidence seems to us ample to support the conviction. There was false grading in each invoice. The sales were not made at a price to be determined on the customers' inspection of the grade. They were made at specific invoice prices which were above the ceiling. The goods were delivered at those prices; and those were the prices

---

[4] The preceding part of the charge was:

"In order that there may be a crime here, there must have been an intent on the part of this defendant to commit that crime, which was to receive a price for the paper which he sold which was in excess of the ceiling price. Now, if actually there had been paid to him more than the ceiling price, but it was the intent and intention of all persons respecting it, not to accept that as the final price necessarily, but to accept it subject to adjustment which would be made upon the examination of the paper actually delivered and the establishment of the price set by law for that paper, that is, if they had the idea that the only price to be received was that which the law set for the paper actually delivered, and that actually was what was paid, then there was no intent on his part to break the law. But if he sold this paper to the dealer, the wholesale dealer for a price which was above the ceiling price, and that was the price that he intended to get, and if you find as a fact that the only reason he didn't get it was because he didn't get away with it and there was a discovery without his having intent to do the honest decent thing, and that was the only reason he didn't get it, still he would have had an intent to commit the crime and would have effectively committed it when he received above-ceiling price which he intended to receive, if he did so intend, and if the only reason that he didn't get the ceiling price was because he was found out."

actually paid. In some instances there was a subsequent adjustment of the price to conform to the price ceiling for the grade actually shipped. But in others there was not. And bearing on the integrity of the system were two other facts—(1) the debits made followed the OPA investigation; (2) the inflated prices were not disclosed on Bruno's books. In a seller's market upgrading may be a convenient device for black market operations. As the Circuit Court of Appeals noted, when paper is scarce the seller may send not what is ordered but what he has, on the assumption that manufacturers will be glad to take any kind of paper they can get. In view of the inadequacy of the supply, buyers cannot always be expected to reject upgraded shipments or insist upon price adjustments. The facts of this case sustain that theory, for in two instances no price adjustment was sought or made. In view of all the circumstances, the jury could well conclude that the system adopted by Bruno was designed to bring him more for the goods than was lawful.

*Reversed.*