**BRISTER & KOESTER LUMBER CORPORATION v. TURNEY, Director, Division of Liquidation, Department of Commerce.**

No. 507.

United States Emergency Court of Appeals

Heard at New York July 29, 1949.

Decided Aug. 25, 1949.

Writ of Certiorari Denied Nov. 7, 1949.

See 70 S.Ct. 146.

844

Arthur G. Warner, New York City, for complainant.

Israel Convisser, Attorney, Department of Justice, Washington, D. C. (Tom C. Clark, Attorney General, Alexander M. Campbell, Assistant Attorney General, Floyd L. Cook and Charles G. Mulligan, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant is a wholesaler of Southern pine lumber who sold by "direct mill shipment" to its buyers. Although it purchased and took title to the lumber at the producing mill, it did not take physical possession of the commodity, but had it shipped by the mill directly to complainant's purchasers. From the mill complainant itself received an invoice; to the prices charged it by the mill for the quantities and grades shown on this invoice, complainant, without verifying the propriety of the prices charged in the original invoice, added its charges and then sent its own invoice for the original invoice prices plus its own mark-up to its purchasers, thus protecting its source of supply from disclosure. It is obvious that, in this type of transaction, complainant, in computing its sales prices relied entirely on the invoice received by it and left it to the mill to see that the shipment actually conformed to the grades and types of lumber specified in its invoices and to the maximum prices established therefor.

During 1943 and 1944, OPA inspectors discovered alleged discrepancies between the types and grades of lumber specified in the invoices sent out by complainant and the types and grades actually received by its purchasers and corresponding overcharges. On the basis of this averment, the Office of Price Administration instituted action against complainant in the District Court, charging complainant with overceiling sales in violation of Revised Maximum Price Regulation 19, issued April 26, 1943 (8 F.R. 5536) and Second Revised Maximum Price Regulation 19, issued January 29, 1944 (9 F.R. 1162) and seeking, under the provisions of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925(e), judgment against complainant in the sum of $600,000. Because complainant's defense to that action rested upon either a favorable interpretation of the applicable regulations or a determination that said regulations were invalid, the latter being a question within this court's exclusive jurisdiction, 50 U.S.C.A.Appendix, § 924(d), complainant filed a protest, seeking to have Revised Maximum Price Regulation 19 and Second Revised Maximum Price Regulation 19 interpreted as requiring conformance to the rules of the Southern Pine Inspection Bureau relative to complaints of over grading and reinspections or, in the alternative, to have the regulations declared invalid.

In its protest complainant contended that Section 21 of Revised Maximum Price Regulation 19, which reads, in part, "The grades and terms in this Regulation are based on the 1939 standard specifications for Southern pine lumber of the Southern Pine Inspection Bureau * * *," had the effect of incorporating into the regulation the Southern Pine Inspection Bureau rules with reference to notification to and

an opportunity for re-inspection by the wholesaler in all cases where buyers complained of overcharges, shortages, or upgrading. Unless this construction should be adopted, complainant argued, the regulations are invalid because: (1) they are discriminatory, arbitrary, and capricious; (2) they violate Section 2(h) of the Price Control Act, 50 U.S.C.A.Appendix, § 902 (h), in that they compel changes in the business practices of the wholesale lumber industry, although such changes were not necessary to prevent evasion of the Act; (3) they violate the due process clause of the Fifth Amendment by penalizing complainant for a violation of which it had no knowledge; (4) they are repugnant to the Eighth Amendment forbidding excessive fines and cruel and unusual punishments; (5) they violate the Price Control Act, Section 205(e), by penalizing complainant more than three times the amount of the overcharge; and (6) they are so vague, indefinite, and uncertain as to be incapable of understanding and interpretation.

The Director referred the protest to a board of review, which, after hearing, issued a report in which the majority recommended that the protest be denied. One member dissented, holding that the regulations should be interpreted as complainant had urged or be held invalid in violation of Section 2(h) of the Price Control Act. The Director approved the views of the majority and denied the protest. This complaint followed.

Our real issue is whether the complainant can be held to have violated the Price Control Act by sales in which it arrived at the sale prices by adding to the ceiling price of its vendor, the producing mill, the 6% wholesaler's mark-up allowed by the regulations, the total prices charged by complainant being in excess of the ceiling prices because the grades and specifications of lumber actually shipped, a matter as to which complainant had no knowledge other than that which it obtained from the mill's invoice, did not conform to the grades and specifications appearing in the invoice sent out by complainant.

Complainant's first contention is that the regulations should be interpreted to mean that no wholesaler can be held liable for an overcharge by it unless it is given notice and an opportunity to re-inspect and make corrections, pursuant to the rules of the Southern Pine Inspection Bureau. It asserts that support for this interpretation lies in Section 21 of the challenged regulations, which provides that the "grades and terms" in the regulations are based on the "1939 standard specifications for Southern pine lumber of the SPIB." According to complainant, this language means that, for the purpose of determining if there has been an over-ceiling sale, the grades and specifications of the lumber sold are to be established, not by the lumber actually shipped, but by the invoice, unless a complaint shall have been filed by the buyer and an opportunity given the seller to re-inspect or re-tally. Complainant also cites a decision of the Comptroller General, Matter of Sullivan Lumber, 23 D.C.G. 703 (1944), in support of this contention.

Respondent denies that the regulations incorporate the Southern Pine Inspection Bureau inspection and shipping rules, maintaining that it was never intended that the liability of a wholesaler for overceiling sales should be contingent upon the buyer's compliance with the association's rules. He insists that the interpretation urged by complainant would apply to willful violators as well as to innocent ones, and would, in effect, give to all wholesalers of southern pine lumber a virtual grant of immunity from price controls, for the reason that, in view of the seller's market prevailing during the war years, buyers were understandably reluctant to make complaints which might result in the loss of their source of supply. U. S. v. Bruno, 329 U.S. 207, at page 211, 67 S.Ct. 211, 91 L.Ed. 193. Finally, respondent distinguishes this case from the Comptroller General's decision cited by complainant and concludes that the phrase, "grades and terms," is used in the technical sense, and does not operate to include the Southern Pine Inspection Bureau shipping and inspection rules in the regulations.

■ We think the interpretation urged by complainant must be rejected. It has no foundation in the literal wording of the regulations, and should not be adopted because of inferences which would result in the practical exception of a large segment of the Southern pine industry from effective price control and thus result in regulations in derogation of the announced purpose of the Price Control Act rather than in aid thereof. The rules may well have been binding upon complainant and its customers, in so far as their contracts were concerned, but we find no basis for holding that such private undertakings were adopted by the Office of Price Administration or intended by it to be binding upon the Government in its attempts to bring about effective price control.

Complainant contends that the regulations, if construed as respondent construes them, are invalid because they compel changes in business practices existing in the Southern pine lumber industry, contrary to Section 2(h) of the Price Control Act, which permits such changes only if they are necessary to prevent circumvention or evasion of the Act. Complainant attached to its protest the affidavits of some thirty persons engaged in or connected with the Southern pine lumber industry, all of whom stated, in effect, that the Southern Pine Inspection Bureau rules with respect to shipping and inspection constitute a codification of a long established business practice in that industry. Respondent replies that the fact that the members of industry regarded themselves as bound by the Southern Pine Inspection Bureau inspection and shipping rules does not establish a business practice such as was contemplated in Section 2(h). Respondent says further that, if there was a business practice, the challenged regulations did not compel any changes in it. Finally, respondent argues that, if the regulations did compel changes in business practices, such changes were necessary to prevent evasion of the Price Control Act and, thus, were not contrary to Section 2(h) thereof.

■■ The affidavits submitted by complainant would seem to establish that the Southern Pine Inspection Bureau shipping and inspection rules fix the liabilities of the parties as between themselves in the Southern pine industry. However, if this be considered a business practice within the meaning of the Act, it is clear that it directly affected prices, and, as we said in Philadelphia Coke Co. v. Bowles, Em.App., 139 F. 2d 349, at page 358, "It is obvious that any control of prices will directly interfere with those business practices which relate to the fixing of prices. It was only to make sure that the Administrator would not go beyond his price regulating function and engage in an effort to reform business practices which were not directly related to prices that Section 2(h) was inserted in the act." Here, the continuation of the business practice as to inspection and complaint which would have had the result of making a violator's liability contingent upon a private complaint by a buyer (who, in view of the prevailing seller's market, would have been most reluctant to make such complaint), would have inevitably led to circumvention and evasion of price control and placed obstacles in the way of the Office of Price Administration's effective enforcement programs. Thus it is clear that changes in this rule of conduct between private contractors were necessary, within the meaning of Section 2(h) of the Act in order to prevent evasion of price control.

■ Complainant objects that the Administrator made no affirmative finding of such necessity as required by the Act. By his Supplementary Order No. 95, issued August 25, 1944, the Director made a general finding of necessity with regard to all then-existing regulations. Complainant insists that this omnibus finding did not sufficiently comply with Section 2(h) of the Act, implying that an individual finding of necessity was required as to each existing regulation. However, there was no requirement of any such finding until the amendment of June 30, 1944; as to regulations which had been issued prior to that date, including those challenged by complainant, a general finding of necessity was then made. This, in the absence of evi-

dence to the contrary, we think was sufficient.

Complainant further contends that the regulations deprive it of due process guaranteed by the Fifth Amendment, by penalizing it for violations of which it had no knowledge. It asserts that it did not have and could not have had any knowledge of the violations of the regulations, and concludes that the regulations deprive it of due process by making it liable for acts of which it had no knowledge, over which it had not control, and which it was powerless to prevent. Although complainant's statement that it had no actual knowledge of the violations is not controverted, we can not agree with its contentions that it could have had no knowledge of the violations or that it was powerless to prevent them. It would have been quite possible, though perhaps a bit inconvenient, for complainant to have sent employees to check the shipments before they left the mills if this had been done, violations could have been discovered and prevented. Complainant's failure to take even the most elementary precautions in this respect provides support for the respondent's contention that, by ordering the mill to ship directly to the purchasers, without checking the grades and prices charged, complainant constituted the mill its agent for the purpose of determining whether its sales prices were in excess of the appropriate maximum prices.

■ In any event, complainant can not deny that it sold lumber to which it held title at prices in excess of those allowed by the applicable regulations. Whether complainant acted in good faith or was lacking in that respect becomes immaterial in our consideration for the existence or non-existence of that fact does not relieve it from liability for violations, in view of the fact that it blindly accepted the invoice figures supplied by the mills. Section 205(e) of the Price Control Act penalizes innocent violations as well as willful ones, and such a provision is not within the prohibition of the Fifth Amendment. Speten v. Bowles, 8 Cir., 146 F.2d 602, certiorari denied 324 U.S. 877, 65 S.Ct. 1023, 89 L.Ed. 1429. As was pointed out in Porter v. Bledsoe, 4 Cir., 159 F.2d 495, in a suit under Section 205(e), good faith is not a defense to an action based on an over-ceiling sale but serves merely to reduce the recovery from three times the amount of the overcharge to the actual amount thereof. See also Crary v. Porter, 8 Cir., 157 F.2d 410.

■ Complainant finally asserts that the challenged regulations violate the Eighth Amendment in that they result in excessive fines and inflict cruel and unusual punishments. Respondent insists that it is the Act itself, Section 205(e), and not the regulations, which fixes the penalties, and that the penalties therein prescribed were held not in violation of the Eighth Amendment in Walsh v. Gurman, 132 Conn. 58, 42 A. 2d 362, certiorari denied Gurman v. Illg, 326 U.S. 719, 66 S.Ct. 24, 90 L.Ed. 426, a case where the recovery allowed was equal to 50 times the amount of the actual overcharge, and in Lapinski v. Capacino, 131 Conn. 119, 38 A.2d 592. But complainant insists that, in its case, the penalty will be much more than that sanctioned by Section 205(e) if "overcharge" is construed to mean the difference between the price actually paid by the purchaser and the maximum price that should have been paid. Complainant argues that, because its position is, as it says, like that of a broker, the word "overcharge" should be construed to mean merely the amount by which its actual mark-up exceeded the mark-up to which it was legally entitled. When a similar contention was made by another wholesaler of Southern pine lumber in Porter v. Bledsoe, supra [159 F.2d 497], the court remarked that "the statute also contains the conclusive answer to the defendants' contention that recovery in the pending case should have been limited to the amount of the commissions received by them * * *." The statute uses the word "overcharge," and it is apparent that, in a sale of goods by one who holds legal title to them, as did complainant, this means the difference between the actual sale price and the permissible ceiling price

and not the profit or benefit or loss accruing to the seller.

Complainant's contentions that the regulations are so vague as to be incapable of understanding, and are discriminatory, arbitrary, and capricious, rest, in final analysis, on the more specific grounds on which complainant has relied in attacking them, and have been disposed of in the foregoing discussion.

Judgment will enter dismissing the complaint.